**IN THE UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF SOUTH CAROLINA
SPARTANBURG DIVISION**

| | | |
|---|---|---|
| The Burlington Insurance Company, | ) | |
| | ) | |
| Plaintiff, | ) | Civil Action No. 7:23-cv-933-TMC |
| | ) | |
| vs. | ) | |
| | ) | |
| Lowery's Social Club, *d/b/a Sasser's*; | ) | |
| James S. Reynolds; Christopher Scott | ) | |
| Pettus, *as personal representative of* | ) | **ORDER** |
| *the Estate of William Clyde Pettus, Jr.*; | ) | |
| and Cole Pettus, | ) | |
| | ) | |
| Defendants. | ) | |
| | ) | |
| | ) | |
| Cole Pettus and Christopher Scott | ) | |
| Pettus, *as personal representative of* | ) | |
| *the Estate of William Clyde Pettus, Jr.*, | ) | |
| | ) | |
| Counter Claimants, | ) | |
| | ) | |
| vs. | ) | |
| | ) | |
| The Burlington Insurance Company, | ) | |
| | ) | |
| Counter Defendant. | ) | |
| _____ | ) | |

This case arises out of an incident at Lowery's Social Club, doing business as Sasser's, ("Lowery's") that resulted in the death of William Clyde Pettus, Jr. Christopher Pettus, as personal representative of the Estate of William Clyde Pettus, Jr., and Cole Pettus (collectively the "Pettus Defendants") filed a complaint in state court against Lowery's, James Reynolds ("Reynolds"), and Michael Barnette ("Barnette"), alleging causes of action for negligence and negligent infliction of emotional distress. (ECF No. 1-1 at 1). Thereafter, The Burlington Insurance Company ("TBIC") filed this declaratory judgment action, concerning the rights, obligations, and liabilities of the

1

parties in the underlying state court action under a commercial liability policy it issued to Lowery's and Reynolds[1] (collectively the "Lowery's Defendants"). (ECF No. 1). The Pettus Defendants filed an answer and counterclaim against TBIC seeking a declaration that the TBIC policy provides coverage to the Lowery's Defendants and that TBIC is required to defend its insured and to satisfy any verdict or judgment rendered against the Lowery's Defendants. (ECF No. 12).

Now before the court are TBIC's and the Pettus Defendants' cross motions for summary judgment. (ECF Nos. 54, 55). The motions have been fully briefed. (ECF Nos. 57, 58, 59, 60, 61, 62). For reasons discussed herein, the court grants summary judgment in favor of TBIC.

## BACKGROUND

On November 28, 2020, Cole Pettus went to Lowery's with his father, William Pettus. (ECF No. 54-5 at 2; Cole Pettus Dep. Tr. 17:15-20). According to Cole Pettus' deposition testimony, he and his father sat at the bar and in close proximity to Barnette and his family. (*Id*. at 3; Dep. Tr. 22:7-10). The two families spoke with each other throughout the night. *Id*. Cole Pettus recalled that Barnette and his family "all looked drunk." (*Id*. at 5; Dep. Tr. 24:3-4). Later that evening, Barnette punched William Pettus in the face, causing him to fall off a step and hit his head on the ground. (*Id*. at 6-7; Dep. Tr. 27:19-23, 35:1-21). William Pettus died following the altercation.

Cole Pettus subsequently prepared a voluntary statement for the Cherokee County Sheriff's Office. (ECF No. 55-2 at 14). Therein, he provided that, while sitting in his father's truck in the Lowery's parking lot after leaving the establishment, his father looked in his truck's rear-view mirror and said "I think he hit a girl. They're fighting." *Id*. at 15. Cole Pettus explained that

---

[1] Reynolds was Lowery's owner and operator at the time of the altercation. (ECF Nos. 1 at 3; 29 at 2).

Barnette, Barnette's mother, Barnette's father, and Barnette's wife were involved in a "chaotic brawl" with Lowery's bouncer. *Id*. William Pettus then jumped out of his truck and ran towards the altercation with his son following behind him. *Id*. When William Pettus reached the scene, Barnette "punched" him in the face. *Id*. According to Cole Pettus' statement, William Pettus fell to the ground, and the brawl continued between, among others, Barnette, Cole Pettus, and Barnette's wife. *Id*. at 16.

Barnette testified that, in the moments leading up to the assault on William Pettus, Barnette's father was pushing Barnette, and William Pettus and Cole Pettus were "hollering and running at [him] trying to jump [him]." (ECF No. 54-6 at 9; Barnette Dep. Tr. 114:2-6). In response, Barnette pushed his father and punched William Pettus. (*Id*. at 12; Dep. Tr. 135:3-8). Barnette pled guilty to assault and battery of a high and aggravated nature. (ECF No. 1 at 4). However, Barnette claims the altercation involving William Pettus was an "accident", (ECF No. 54-6 at 10; Dep. Tr. 118:2-6), and that he was defending himself, (*id*. at 11; Dep. Tr. 120:16-17). He filed a post-conviction relief action contending his lawyers were ineffective and "tricked" him into taking a plea. (*Id*. at 8; Dep. Tr. 113:21-25). In his deposition, he stated: "I honestly feel like I was just defending myself. I've got this man pushing me, my daddy, and then I've got two other men hollering and running at me trying to jump on me. I was really honestly just defending myself." (*Id*. at 9; Dep. Tr. 114:2-6).

The Pettus Defendants filed a complaint in state court against the Lowery's Defendants and Barnette. (ECF No. 1-1). Therein, they allege that, on or around November 28 to November 29, 2020, the Lowery's Defendants served "Barnette a quantity of alcohol causing him to become intoxicated and/or served him while intoxicated to such an extent as to become obstreperous, boisterous and prone to violent action, in violation of South Carolina law." *Id*. at 4. The Pettus

3

Defendants claim that "Barnette, suddenly and without any warning, struck William Clyde Pettus, Jr.", causing him to fall to the ground and sustain fatal injuries. *Id*. at 5.

The Pettus Defendants brought claims for negligent infliction of emotional distress and "negligence, gross negligence, wrongful death, survival." (ECF No. 1-1 at 5-7). They contend the Lowery's Defendants were negligent, careless, reckless, willful, and grossly negligent:

a.  In serving alcoholic beverages to Defendant Barnette when they knew or should have known he was intoxicated;

b.  In serving alcoholic beverages to Defendant Barnette in an amount causing him to become intoxicated;

c.  In failing to properly and adequately supervise its employees, agents, servants, representatives and/or bartenders with regard to the proper service of alcohol;

d.  In failing to adequately and properly monitor the activities of its employees, servants, agents, representatives, bartenders, and/or waitstaff in the service of alcohol;

e.  In failing to adequately train or have qualified employees, servants, agents, representatives, bartenders, and/or waitstaff serve alcohol to the general public;

f.  In failing to implement or maintain policies and procedures necessary for the reasonable service of alcohol to the general public;

g.  In deviating from the accepted standard of care in the service of alcoholic beverages to an intoxicated person;

h.  In creating an atmosphere of encouraging the consumption of excessive amounts of alcohol;

     i.   In failing to remove Defendant Barnette from the premises when his behavior warranted such action;

     j.   In serving alcoholic beverages to Defendant Barnette when he was intoxicated, even though Defendants knew or should have known that doing so increased the danger that Defendant Barnette would act in a violent manner;

     k.   In failing to employ security guards or 'bouncers' who could have controlled Defendant Barnette;

     l.   In failing to protect Plaintiff from the activities and proclivities of Defendant Barnette;

     m.   In failing and omitting to exercise due care under the circumstances existing at said time and place;

     n.   In otherwise being negligent, reckless and careless; and,

     o.   For such other acts and/or omissions that may become apparent through the discovery and/or trial of this matter.

*Id*. The Pettus Defendants seek, among other things, actual and punitive damages. *Id*. at 7.

TBIC filed this declaratory judgment action, seeking a declaration of the rights, obligations, and liabilities of the parties under a commercial insurance policy with respect to the claims against the Lowery's Defendants. (ECF No. 1). In support of its position that the TBIC policy does not afford coverage to the Lowery's Defendants for any claims in the state court action, TBIC argues, among other things, the "assault, battery or other physical altercation" exclusion under the policy excludes coverage for the state court claims and the punitive damages exclusion endorsement excludes coverage for any claim for punitive or exemplary damages that may be awarded against the Lowery's Defendants in the underlying lawsuit. *Id*. at 7-8.

The Lowery's Defendants filed an answer to TBIC's complaint. (ECF No. 29). The Pettus Defendants filed an answer and counterclaim against TBIC seeking a declaration that the TBIC policy does provide coverage and that TBIC is required to defend its insured and to satisfy any verdict or judgment rendered against the Lowery's Defendants. (ECF No. 12). TBIC filed an answer to the counterclaim on April 13, 2023. (ECF No. 14). TBIC and the Pettus Defendants each filed summary judgment motions. (ECF Nos. 54, 55).

In their summary judgment motion, the Pettus Defendants argue: (1) TBIC's declaratory judgment action is not ripe and should be dismissed;[2] (2) TBIC's liquor liability and punitive damages exclusions violate South Carolina's mandatory insurance law and public policy and are void; and (3) the assault and battery exclusion should not apply because Barnette testified he acted in self-defense and that he never intended to harm William Pettus. (ECF No. 54).

In its summary judgment motion, TBIC asks the court to declare: (1) the TBIC policy does not provide coverage to the Lowery's Defendants for any of the claims in the state court action; (2) TBIC is not required to defend the Lowery's Defendants under the TBIC policy; and (3) TBIC is not obligated in any way to pay damages the Lowery's Defendants may be required to pay as a result of the state action. (ECF No. 55-1). It provides "it is undisputed that—as alleged in the Underlying Lawsuit and confirmed through discovery—all of the claims against the Lowery's Defendant[s] arose out of an altercation during which Mr. Barnette ultimately assaulted and battered" William Pettus. *Id*. at 12.

---

[2] The Pettus Defendants previously filed a motion to dismiss this case, arguing the issues raised in TBIC's complaint are not ripe. (ECF No. 35). At the time the Pettus Defendants filed their motion for summary judgment, their motion to dismiss was still pending. However, the court has since denied their motion to dismiss for the reasons set forth in its order at ECF No. 64. For those reasons, the court again finds this case raises an issue ripe for adjudication and denies the Pettus Defendants' motion for summary judgment on this issue.

## STANDARD OF REVIEW

Summary judgment is appropriate only if the moving party "shows that there is no genuine dispute as to any material fact and the [moving party] is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). A party may support or refute that a material fact is not disputed by "citing to particular parts of materials in the record" or by "showing that the materials cited do not establish the absence or presence of a genuine dispute, or that an adverse party cannot produce admissible evidence to support the fact." Fed. R. Civ. P. 56(c)(1). Rule 56 mandates entry of summary judgment "'against a party who fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial.'" *Phillips v. Nlyte Software Am. Ltd.*, 615 Fed. App'x 151, 152 (4th Cir. 2015) (quoting *Celotex Corp. v. Catrett*, 477 U.S. 317, 322 (1986)).

"'In determining whether a genuine issue has been raised, the court must construe all inferences and ambiguities in favor of the nonmoving party.'" *Sellers v. Keller Unlimited LLC*, 388 F. Supp. 3d 646, 649 (D.S.C. 2019) (quoting *HealthSouth Rehab. Hosp. v. Am. Nat'l Red Cross*, 101 F.3d 1005, 1008 (4th Cir. 1996)). However, "'[o]nly disputes over facts that might affect the outcome of the suit under the governing law will properly preclude the entry of summary judgment. Factual disputes that are irrelevant or unnecessary will not be counted.'" *McKinney v. G4S Gov't Sols., Inc.*, 711 Fed. App'x 130, 134 (4th Cir. 2017) (quoting *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986)). The moving party has the burden of proving that summary judgment is appropriate. *Bd. of Trs., Sheet Metal Workers' Nat'l Pension Fund v. Lane & Roderick, Inc.*, 736 Fed. App'x 400, 400 (4th Cir. 2018) (citing *Celotex Corp.*, 477 U.S. at 322–23). Once the moving party makes this showing, however, the opposing party may not rest upon mere allegations or denials, but rather must, by affidavits or other means permitted by the Rule, set forth

specific facts showing that there is a genuine issue for trial. *See* Fed. R. Civ. P. 56(c), (e); *Humphreys & Partners Architects, L.P. v. Lessard Design, Inc.*, 790 F.3d 532, 540 (4th Cir. 2015).

## DISCUSSION

Under the Declaratory Judgment Act, a district court "may declare the rights and other legal relations of any interested party seeking such declaration, whether or not further relief is or could be sought." 28 U.S.C. § 2201(a). The United States Supreme Court has "repeatedly characterized the Declaratory Judgment Act as 'an enabling Act, which confers discretion on the courts rather than an absolute right upon the litigant.'" *Wilton v. Seven Falls Co.*, 515 U.S. 277, 287 (1995) (quoting *Pub. Serv. Comm'n of Utah v. Wycoff Co.*, 344 U.S. 237, 241 (1952)). Courts have long interpreted the Act's permissive language "to provide discretionary authority to district courts to hear declaratory judgment cases." *United Capitol Ins. Co. v. Kapiloff*, 155 F.3d 488, 493 (4th Cir. 1998). A court should generally exercise jurisdiction over a declaratory judgment claim "(1) when the judgment will serve a useful purpose in clarifying and settling the legal relations in issue, and (2) when it will terminate and afford relief from the uncertainty, insecurity, and controversy giving rise to the proceeding." *Aetna Cas. & Sur. Co. v. Quarles*, 92 F.2d 321, 325 (4th Cir. 1937).

This declaratory judgment action concerns a commercial insurance policy TBIC issued to Lowery's for coverage effective September 15, 2020 to September 15, 2021. Under South Carolina law,[3] "[a]n insurance policy is a contract between the insured and the insurance company, and the terms of the policy are to be construed according to contract law." *Auto Owners Ins. Co. v. Rollison*, 663 S.E.2d 484, 487 (S.C. 2008). As such, insurance policies are subject to the general

---

[3] A federal district court sitting in diversity must apply the substantive law of the state in which the court sits, *Erie R.R. Co. v. Tompkins*, 304 U.S. 64, 79 (1938), and in this case, the parties do not dispute that South Carolina law applies.

rules of contract construction, and the court must give the policy language its plain, ordinary, and popular meaning. *Bell v. Progressive Direct Ins. Co.*, 757 S.E.2d 399, 406 (S.C. 2014). The obligation of the insurer under an insurance policy "is defined by the terms of the policy itself and cannot be enlarged by judicial construction." *S.C. Farm Bureau Mut. Ins. Co. v. Wilson*, 544 S.E.2d 848, 850 (S.C. Ct. App. 2001). Indeed, it is well settled that "courts have no authority to torture the meaning of policy language to extend or defeat coverage that was never intended by the parties." *Diamond State Ins. Co. v. Homestead Indus., Ins.*, 456 S.E.2d 912, 915 (S.C. 1995) (citing *Torrington Co. v. Aetna Cas. & Sur. Co.*, 216 S.E.2d 547, 550 (S.C. 1975)). *See Sphere Drake Ins. v. Litchfield*, 438 S.E.2d 275, 277 (S.C. Ct. App. 1993) (providing "[w]hile a policy should be liberally construed in favor of coverage and against exclusion, courts are not permitted to torture the ordinary meaning of language to extend coverage expressly excluded by the terms of the policy"). *See also William v. Gov't Emps. Ins. Co.*, 762 S.E.2d 705, 712 (S.C. 2014) (stating "[w]hile parties are generally permitted to contract as they see fit, freedom of contract is not absolute and coverage that is required by law may not be omitted"); *Pennsylvania Nat'l Mut. Cas. Ins. Co. v. Parker*, 320 S.E.2d 458, 461 (S.C. Ct. App. 1984) (recognizing "insurers have the right to limit their liability and to impose whatever conditions they desire upon an insured, provided they are not in contravention of some statutory inhibition or public policy"). Further, "[w]here the terms of a contract are clear and unambiguous as a matter of law, its construction is for the court." *Black v. Freeman*, 262 S.E.2d 879, 880 (S.C. 1980).

The TBIC policy at issue in this case included a commercial general liability coverage form as well as a liquor liability coverage form, which both include an "assault, battery or other physical altercation" exclusion (hereinafter "the assault and battery exclusion").

The general liability coverage form and liquor liability coverage form in the TBIC policy

provide, in relevant part:

**COMMERCIAL GENERAL LIABILITY COVERAGE FORM**

**COVERAGE A BODILY INJURY AND PROPERTY DAMAGE LIABILITY**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "bodily injury" or "property damage" to which this insurance applies. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "bodily injury" or "property damage" to which this insurance does not apply. . . .

b. The insurance applies to "bodily injury" and "property damage" only if:
(1) The "bodily injury" or "property damage" is caused by an "occurrence" that takes place in the "coverage territory";

(ECF No. 1-2 at 46, 53).

**LIQUOR LIABILITY COVERAGE FORM**

**SECTION I –LIQUOR LIABILITY COVERAGE**

**1. Insuring Agreement**

a. We will pay those sums that the insured becomes legally obligated to pay as damages because of "injury" to which this insurance applies if liability for such "injury" is imposed on the insured by reason of selling, serving or furnishing of any alcoholic beverage. We will have the right and duty to defend the insured against any "suit" seeking those damages. However, we will have no duty to defend the insured against any "suit" seeking damages for "injury" to which this insurance does not apply. . . .

b. This insurance applies to "injury" only if:
  1. The "injury" occurs during the policy period in the "coverage territory"; and
    . . . .

(ECF No. 1-2 at 15).

Each form is subject to an endorsement containing the assault and battery exclusion, which

bars coverage for "bodily injury", "injury", or "property damage":

(1) Expected or intended from the standpoint of any insured.

(2) Arising in whole or in part out of any "assault" or "battery" committed or attempted by any person.

(3) Arising in whole or in part out of any act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened "assault" or battery."

(4) Arising in whole or in part out of any actual or threatened verbal or physical confrontation or altercation committed or act or omission in connection with avoiding, preventing, suppressing or halting any actual or threatened verbal or physical confrontation or altercation.

(ECF No. 1-2 at 9, 30). The endorsements continue, stating that this exclusion applies:

> to all acts or omissions, including any act or omission in responding to or failing to respond or render aid, medical or otherwise, to any victim of the "assault" or "battery" or physical confrontation or altercation and **all theories of liability (direct or vicarious) asserted against any insured, including but not limited to all theories of negligence, gross negligence, recklessness or intentional tort** and shall not be subject to any severability or separation of insureds provision in the policy.

*Id.* (emphasis added). "Assault" is defined as "any attempt or threat to inflict 'Injury' upon the person of another, or any display of force such as would give a person reason to fear or expect immediate bodily harm." *Id*. "Battery" is defined as "physical contact with a person without his or her consent that entails some 'injury' or offensive touching." *Id*.

The Pettus Defendants argue § 61-2-145 of the South Carolina Code prohibits insurers from including an exclusion in a liquor liability policy that bars coverage for injuries arising from an assault or battery. (ECF No. 54 at 7). This statute states:

A. In addition to all other requirements, **a person licensed or permitted to sell alcoholic beverages for on-premises consumption**, which remains open after five o'clock p.m. to sell alcoholic beverages for on-premises consumption, **is required to maintain a liquor liability insurance policy or a general liability insurance policy with a liquor liability endorsement for a total coverage of at least one million dollars** during the period of the biennial permit or license. Failure to maintain this coverage constitutes grounds for suspension or revocation of the permit or license.

11

S.C. Code Ann. § 61-2-145(A) (emphasis added). The Pettus Defendants argue this statute "does not allow any exceptions or exclusions to its liquor liability mandate."[4] (ECF No. 54 at 7). Quoting the South Carolina Court of Appeals' decision in *Pennsylvania National Mutual Casualty Insurance Company v. Parker*, 320 S.E.2d 458, 461 (S.C. Ct. App. 1984), they contend that "[w]here a statute requires insurance for the benefit of the public, . . . the insurer is not permitted to nullify its purposes through engrafting exceptions from liability as to uses which it was the evident purpose of the statute to cover." *Id*. Accordingly, they posit the TBIC policy is in violation of the statute because it excludes coverage under the assault and battery exclusion. (ECF No. 61). Moreover, they assert "[t]he legislative purpose of affording protection to innocent victims who have been injured by over served and intoxicated patrons of establishments are gutted by . . . TBIC's assault and battery exclusion and punitive damages exclusion." (ECF No. 54 at 10). Thus, they contend excluding coverage for assault and battery and punitive damages would render the liquor liability insurance in this case virtually meaningless." *Id*. at 9. The court disagrees.

As TBIC points out, section 61-2-145 "is directed to liquor licensees and the coverage that the licensee must obtain, not to the terms or coverage that the insurer must offer." (ECF No. 58 at 13). There is nothing in the statute prohibiting an insurer from excluding claims arising from an assault or battery. Therefore, the court does not find the exclusion void as against state law. Courts in this district have reached the same conclusion when examining this statute in connection with an assault and battery exclusion. *See White v. Covington Specialty Ins. Co*., No. 7:24-cv-816-JDA, 2024 WL 4929744, *4 (D.S.C. Dec. 2, 2024) (determining the statute "merely mandates the

---

[4] Similarly, the Lowery's Defendants contend that "[w]ith the enactment of the statute, South Carolina has now mandated certain coverages, so exclusions seeking to circumvent statutorily mandated coverage violate the law." (ECF No. 59 at 2).

coverage a licensee must obtain, not the terms an insurer must offer"). *See also DHW Purchasing Grp., LLC v. Hub Int'l Midwest Ltd.*, No. 3:19-cv-1243-CMC, 2019 WL 5700457, *8 n.17 (D.S.C. Nov. 4, 2019) (recognizing section 61-2-145 "is directed to the coverage a *licensee* must obtain, not to the terms an insurer must offer" and stating that there is "nothing in this statute . . . [that] suggests an insurer may not exclude claims arising in whole or in part from an assault, battery, or other altercation") (emphasis in original).

Further, contrary to the Pettus Defendants' position, the court does not find the exclusions relied on render the TBIC policy "virtually meaningless" because, as even they recognize, the policy still would provide coverage for "when an overserved and intoxicated person injures an innocent third party in a motor vehicle collision".[5] (ECF No. 54 at 7, 9). As such, it cannot be said that the TBIC policy is "virtually meaningless." Accordingly, the court does not find the assault and battery exclusion void as against South Carolina law or public policy. The court will next turn to whether such exception applies to the Pettus Defendants' claims against the Lowery's Defendants in the underlying state court action.[6]

---

[5] Indeed, such coverage was the driving force for the statute. When the bill was presented for a second reading in the South Carolina Senate on March 16, 2017, the senators explained the "impetus" of the bill was to protect the public from overserved patrons getting behind the wheel of a vehicle and causing an accident. South Carolina Legislature, Senate Chamber Video from January 10, 2017 (1:01:30-1:11:01), *available at* https://www.scstatehouse.gov/video/archives.php?key=6741&part=1.[5] Therefore, even with the assault and battery exclusion, the primary protections sought to be afforded by the statute are still available under the policy.

[6] The court also notes that in the Lowery's Defendants' responses to the pending motions for summary judgment, they rely on the "reasonable expectations" doctrine to create coverage. (ECF No. 59 at 3). Under that doctrine, "[t]he objectively reasonable expectations of applicants and intended beneficiaries regarding the terms of insurance contracts will be honored even though painstaking study of the policy provisions would have negated those expectations." Robert E. Keeton, *Insurance Law Rights at Variance with Policy Provisions: Part One*, 83 Harv. L. Rev. 961, 967 (1970) (quoted in *Bell*, 757 S.E.2d at 405 n.6.). In *Bell*, the South Carolina Supreme Court agreed that this doctrine, "in its traditional formulation, identifies a 'broader principle underlying the 'cogeries of doctrines' comprising the rules of insurance policy interpretation," but the Court

declined to apply the doctrine where an insurance contract "unambiguously denies coverage under its plain terms." *Id*. at 406. The *Bell* Court found instructive the following language from the Delaware Supreme Court:

> Thus, the rule, as recognized by this Court, is consistent with the general rules of construction, to which we have referred, that is, the Court will look to the reasonable expectations of the insured at the time when he entered into the contract if the terms thereof are ambiguous or conflicting, or it the policy contains a hidden trap or pitfall, or if the fine print takes away that which has been given by the large print. But the doctrine is not a rule granting substantive rights to an insured when there is no doubt as to the meaning of policy language.

*Hallowell v. State Farm Mut. Auto. Ins. Co.*, 443 A.2d 925, 927 (Del. 1982). It also found instructive *Clark-Peterson Co., Inc. v. Independent Insurance Associates, Ltd.*, 492 N.W.2d 675, 677 (Iowa 1992), which provided "[t]he doctrine . . . can only be invoked where an exclusion '(1) is bizarre or oppressive, (2) eviscerates terms explicitly agreed to, or (3) eliminates the dominant purpose of the transaction.'" (quoting *Aid (Mut.) Ins. v. Steffen*, 423 N.W.2d 189, 192 (Iowa 1988)).

In support of their position that the doctrine should apply here, the Lowery's Defendants contend: (1) the policy terms conflict with statutory mandates; and (2) the policy contains a hidden trap and pitfall in carving out a significant category of foreseeable risk of loss. (ECF No. 59 at 4). They also provide that, in his deposition, Reynolds testified that he did not discuss an assault and battery exclusion when inquiring about the policy with TBIC and that he "assumed" his policy covered assaults and batteries. (ECF No. 58-1 at 9; Reynolds Dep. Tr. 86:13-16; ECF No. 59-1 at 1; Reynolds Dep. Tr. 36:10-15).

As discussed, the court finds the exclusion does not conflict with statutory mandates. Additionally, the South Carolina Supreme Court made clear that the doctrine "cannot be used to alter the plain terms of an insurance policy." *Bell*, 757 S.E.2d at 407. At the top of both endorsements containing the assault and battery exclusion was the language: **"THIS ENDORSEMENT CHANGES THE POLICY. PLEASE READ IT CAREFULLY."** (ECF No. 1-2 at 9, 30). Immediately after this language, and in even larger font, is the following language: "**EXCLUSION – ASSAULT, BATTERY, OR OTHER PHYSICAL ALTERCATION**". *Id*. The assault and battery exclusion contained therein is clear and unambiguous and in no way hidden in the policy. Unfortunately, Reynolds did not review the policy until after the underlying action was brought against him. (ECF No. 58-1 at 8; Reynolds Dep. Tr. 38:2-21). Further, there is no evidence suggesting the assault and battery exclusion is bizarre or oppressive, eviscerates terms explicitly agreed to, or that it eliminates the dominant purpose of the transaction. *See also Sphere Drake Ins. Co.*, 438 S.E.2d at 277-78 (finding "no basis to apply the concepts of reasonable expectation or unconscionability to defeat the plain language of the policy" and explaining that had the bar owner "wished to insure against the excluded risk [of assault and battery] they could have contracted for additional coverage and paid an additional insurance premium"). Accordingly, the court declines to apply the reasonable expectations doctrine to this case.

Initially, the court finds the Pettus Defendants' claims against the Lowery's Defendants in the underlying action arise out of the altercation between Barnette and William Pettus because, but for the altercation, the Pettus Defendants would not have sustained their injuries. Therefore, if the assault and battery exclusion applies, all of the Pettus Defendants' state claims against the Lowery's Defendants are necessarily barred from coverage.[7] *See Founders Ins. Co. v. Hamilton*, No. 5:15-cv-408, 2017 WL 3415074, *5 (D.S.C. Aug. 9, 2017) (gathering cases from this state that "clearly demonstrate that claims arising from an assault and battery, whether rooted in the actual assault and battery or couched in terms of negligence, fall within the parameters of an assault and battery exclusion and, therefore, such claims do not trigger an insurer's duty to defend or indemnify" and, thus, concluding the negligence claims against an establishment for "negligence/dram shop/negligence per se/survival/conscious pain and suffering", which arose from an individual being shot after the shooter was overserved at said establishment, are excluded from coverage under the assault and battery exclusion of the insurance policy).

The Pettus Defendants posit the assault and battery exclusion should not apply given Barnette's testimony that he was acting in self-defense at the time he punched William Pettus and that he did not intend to harm him. (ECF No. 54 at 10). However, regardless of his intent at the time, it is undisputed Barnette punched William Pettus in the face without his consent, which resulted in the decedent sustaining fatal injuries. Again, the second subpart of the assault and battery exclusion, excludes coverage for injuries "[a]rising in whole or in part out of any 'assault' or 'battery' committed or attempted by any person." (ECF No. 1-2 at 9, 30). This subpart does not include an intent to harm requirement. Nor do the definitions of "assault" and/or "battery" under

---

[7] The Pettus Defendants do not dispute that their claims against the Lowery's Defendants arise out of the altercation. Rather, as discussed, they argue the assault and battery exclusion is void and, alternatively, that the exclusion should not apply for the reason set forth below.

the policy. Thus, the undisputed material facts show the second subpart of the exclusion applies because William Pettus' fatal injuries clearly arose in whole or in part out of a battery defined under the policy. Accordingly, the court finds the assault and battery exclusion applies to the Pettus Defendants' claims against the Lowery's Defendants in the underlying state court action and bars coverage.[8]

Based on the foregoing, TBIC is entitled to a declaration that (1) the TBIC policy does not provide coverage to the Lowery's Defendants for any of the claims in the state court action; (2) TBIC is not required to defend the Lowery's Defendants under the TBIC policy; and (3) TBIC is not obligated in any way to pay damages the Lowery's Defendants may be required to pay as a result of the underlying lawsuit.

## CONCLUSION

The court **GRANTS** TBIC's motion for summary judgment, (ECF No. 55), and **DENIES** the Pettus Defendants' motion for summary judgment, (ECF No. 54). As such, declaratory judgment shall be entered in favor of TBIC.

**IT IS SO ORDERED.**

s/Timothy M. Cain
United States District Judge

March 13, 2025
Anderson, South Carolina

---

[8] Because the court finds the assault and battery exclusion bars coverage for the Pettus Defendants' claims in the underlying state court action, the court need not address the Pettus Defendants' argument concerning the punitive damages exclusion.